Filed 4/14/15  P. v. Regalado CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B255074 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA058648) |
| v. | |
| DENNIS BALISCAN REGALADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Blanchard, Judge.  Reversed and remanded for resentencing.

William Hassler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe J. Leszkay and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following his conviction of various charges arising out of assault and making criminal threats, defendant and appellant Dennis Baliscan Regalado was sentenced to a prison term of 113 years to life. He challenges that sentence on appeal, and we agree. Considering appellant's criminal history and by examining other cases in which defendants have been sentenced for similar crimes, we conclude that appellant's sentence violates California's prohibition against cruel or unusual punishment. (Cal. Const., art. I, § 17.) Accordingly, we reverse the matter and remand it to the trial court for resentencing.

## PROCEDURAL BACKGROUND

In an information filed by the Los Angeles District Attorney, appellant was charged with two counts of assault with a firearm (Pen. Code, § 187, subd. (a), counts 1 & 3),[1] two counts of criminal threats (§ 422, subd. (a), counts 2 & 4), dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1), count 5), two counts of possession of a firearm by a felon with two priors (§ 29800, subd. (a)(1), counts 6 & 7), possession of ammunition (§ 30305, subd. (a)(1), count 8), and dissuading a witness from testifying (§ 136.1, subd. (a)(1), count 9). As to all counts, two prior serious and/or violent felonies (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) were also alleged. In addition, as to counts 1 through 4, it was alleged that appellant personally used a firearm in the commission of the offenses (§ 12022, subd. (a)). Finally, as to counts one through three, two prior serious felonies (§ 667, subd. (a)(1)) were alleged.

Appellant pleaded not guilty and denied the allegations. Trial was by jury. The jury found appellant guilty on counts 2 through 9, and found true the special allegation that appellant personally used a firearm with respect to counts 2, 3, and 4. Appellant was acquitted on count 1. In a bifurcated proceeding, appellant admitted having suffered two prior convictions under the Three Strikes law. Appellant's motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) was heard and denied.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

Appellant was sentenced to a term of 113 years to life in state prison, computed as follows:  25 years to life, plus two consecutive five-year terms (§ 667, subd. (a)(1)), plus the mid-term of two years, doubled to four years for a total of 39 years on counts 2 and 3, to run consecutively; plus 25 years to life, plus two consecutive five-year terms (§ 667, subd. (a)(1)), for a total of 35 years on count 9.[2]  He was awarded 1,481 days of presentence custody credits.  Various fines and fees were imposed and one was stayed.

Appellant timely filed a notice of appeal.

## FACTUAL BACKGROUND

I. *Prosecution Evidence*

A. <u>Facts in this Case</u>

On May 29, 2012, Elsie Regalado (Elsie) was at her home with her husband, appellant, in Lancaster.  Sometime before 9:00 a.m., appellant began arguing with Elsie.  Elsie was upset with appellant because of his drinking.  He got violent when he drank.  During the argument, Elsie told him to stop drinking and to go to work.  Appellant threatened to kill Elsie.  Appellant went to the bedroom and grabbed a shotgun out of the closet.

When appellant returned, he loaded two bullets into the shotgun.  Appellant, who was standing within reaching distance of Elsie, pointed the shotgun at her head.  She pushed the gun away.  He threatened to bury her alive.  He grabbed her by the throat and instructed her to open her mouth.  Elsie was scared that appellant was going to kill her.  She ran to the garage, but appellant followed her.  Elsie got into her car and drove to the police station.

After filing a police report, Elsie went to a friend's house because she feared that appellant might hurt her.  Appellant contacted Elsie, apologized, and said that it would never happen again.  The next day, Elsie returned to her home with appellant.

On June 10, 2012, at approximately 6:30 p.m., Elsie was home with appellant.  The couple began to argue.  Appellant had been drinking and wanted to have sex with

---

[2]     He was sentenced on counts 4, 5, 6, 7, and 8, but those sentences were stayed.

3

Elsie. When she told him "no," he became angry. He followed her around the house and yelled at her. He grabbed his shotgun. He stood behind Elise and pointed the shotgun at her back. Appellant threatened to kill her.

Elsie was scared and went into another room. Appellant followed her, while still pointing the shotgun at her. Elsie then went into the kitchen and picked up the telephone to try to call the police. Elsie dialed 911 and told the operator that appellant was trying to kill her. However, she was unable to finish the call; appellant grabbed the telephone from her and pulled the cord from the wall, "[s]o [the police could not] call back." Appellant hid his shotgun in a storage room in the backyard. He told Elsie that he did not want to go to jail. Elsie heard the police coming, so she went to the garage. Appellant followed her to the garage.

Despite this troubled history, Elsie and appellant remained in frequent contact while he was in the county jail from the date of his arrest on June 10, 2012, through trial. During that time, she accepted 159 collect calls from appellant, visited him three times, and sent him money on 10 to 15 occasions. She also sent the district attorney a notarized letter in September 2012, asking the prosecutor to drop the charges against appellant because she had "'overreacted and got back at [appellant] out of anger.'"

Ruth Silverio, a native Tagalog speaker, listened to 30 hours of phone calls between Elsie and appellant. The prosecutor instructed Ms. Silverio to summarize any portions of the calls that were "about the case [or] about guns, or [] where [appellant] would ask [Elsie] to lie." Ms. Silverio testified that in several of the calls, appellant told Elsie that she should lie if necessary, not talk to anyone about the case except him, and not show up in court, because "then there [would be] no case."

B. Facts Relating to Appellant's Two Prior Convictions

Appellant's two prior felony convictions also arose out of incidents in which appellant threatened to shoot someone. In 2006, appellant argued with a neighbor, retrieved a gun, and fired a shot in the air; in 2010, he again argued with neighbors and threatened to shoot them while making a gesture like firing a gun.

4

II. *Defense Evidence*

Appellant did not offer any evidence.

## DISCUSSION

I. *Forfeiture*

As anticipated in appellant's opening brief, the People argue appellant has forfeited his challenge to his sentence on appeal by failing to raise the argument below.

Defense counsel did not specifically object that appellant's sentence was cruel and/or unusual, and generally speaking, the failure to object would amount to a forfeiture of the claim on appeal. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) But, "[n]ot all claims of error are prohibited in the absence of a timely objection in the trial court. A defendant is not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights." (*People v. Vera* (1997) 15 Cal.4th 269, 276.) Moreover, in an effort to "'forestall a subsequent claim of ineffectiveness of counsel' [citation], we will consider the issue." (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.)

II. *Appellant's sentence amounts to cruel or unusual punishment*

A. <u>Legal Principles</u>

A sentence is cruel or unusual under California law if "'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (*People v. Norman* (2003) 109 Cal.App.4th 221, 230.) In making that determination, courts consider the nature of the offense and offender, and compare the sentence with sentences imposed for more serious crimes in California and for the same crime in other jurisdictions.[3] (*Ibid.*; see *In re Lynch* (1972) 8 Cal.3d 410, 424–427.)

---

[3]     Since we are deciding this matter under the California Constitution, we need not discuss the United States Constitution. We note, however, that a sentence is cruel and unusual under the Eighth Amendment to the United States Constitution if it is "grossly disproportionate to the severity of the crime." (*Rummel v. Estelle* (1980) 445 U.S. 263, 271; *Ewing v. California* (2003) 538 U.S. 11, 21.)

5

B.  Appellant's Sentence is Unconstitutional

Applying these factors, we conclude that appellant's sentence is unconstitutional. We first consider the nature of the offense and the offender, including his criminal history.  (*People v. Dillon* (1983) 34 Cal.3d 441, 479, abrogated on other grounds as stated in *People v. Chun* (2009) 45 Cal.4th 1172, 1186.)  We recognize that appellant's crimes here were dangerous.  But we cannot ignore "the totality of the circumstances surrounding the commission of the offense in the case at bar."  (*People v. Dillon, supra,* at p. 479.)  Appellant was intoxicated when he committed the charged crimes.  As pointed out in his opening brief on appeal, he "is a drunk, a fool and a bully."  But, he is not "an assassin, a violent rapist or a political terrorist," and he should not have been sentenced as such.

Our conclusion is bolstered by examining other cases in which defendants have been sentenced for similar crimes.  (See, e.g., *People v. Toledo* (2001) 26 Cal.4th 221, 226 [defendant convicted of attempted criminal threats and assault with a deadly weapon against his girlfriend; prior conviction for assault with a firearm; sentenced to 11 years]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1008–1010 [defendant, a known gang member, convicted of two counts of making terrorist threats and one count of arson after threatening to kill his ex-girlfriend and another and setting fire to their residence; prior conviction for stabbing another victim in the stomach; sentenced to 24 years eight months]; *People v. Franz* (2001) 88 Cal.App.4th 1426, 1432, 1437–1438 [defendant, a gang member, convicted of two counts of criminal threats, one count of spousal battery, two counts of dissuading a witness from reporting a crime, one count of battery, and one count of assault and battery; prior conviction for counterfeiting; sentenced to four years eight months]; *People v. Butler* (2000) 85 Cal.App.4th 745, 748 [defendant, a gang member, convicted of making terrorist threats, assault with a deadly weapon, burglary, and battery, after threatening and assaulting a family and ordering them to move out or be killed; prior felony conviction for attempted robbery; sentenced to 13 years].)

6

We agree with the People that appellant's conduct "warranted a significant period of incarceration." But, while his conduct was reprehensible, it does not support a sentence amounting to the "legal equivalent" of life without the possibility of parole. (*People v. Caballero* (2012) 55 Cal.4th 262, 271 (conc. opn. of Werdegar, J.).)

## DISPOSITION

The judgment is reversed and remanded for resentencing.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
HOFFSTADT